# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### NORTHERN DIVISION

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO, *et al.*,

        Plaintiffs,

        vs.

SOCIAL SECURITY ADMINISTRATION,
*et al.*,

        Defendants.

**REDACTED**

Civil Action No. 1:25-cv-00596

## PLAINTIFFS' REPLY IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

Defendants' opposition is unresponsive to Plaintiffs' arguments and allegations and mischaracterizes Plaintiffs' claims. *See* Opposition Brief at 19–20, 28–29, ECF 113 (hereinafter "Opp.").[1] This misses the point. Plaintiffs seek redress for Defendants' grant of nearly unlimited access to systems of records containing personally identifying information ("PII") to DOGE Team members who lack a need to know and whose access is barred by the Privacy Act, Internal Revenue Code, Social Security Act, Social Security Administration ("SSA") regulations, and the Administrative Procedure Act. Defendants' position is also foreclosed by record evidence, and Defendants cannot find safe harbor by emphasizing actions taken after this Court's issuance of the Temporary Restraining Order. *See* Temp. Restraining Ord., ECF 48 (hereinafter "TRO"). If anything, those actions underscore that this Court's injunction is the only thing keeping Defendants from disregarding SSA's commitment to maintaining the privacy of a "massive amount"[2] of sensitive, personally identifying data.

---

[1] Where possible, all citations reference the electronic pagination applied by the electronic docketing system.

[2] *See* Temp. Restraining Ord. Hearing Transcript at 16:24-17:1, ECF 73 (hereinafter "TRO Tr.").

## JURISDICTION

This Court has jurisdiction over Plaintiffs' claims.

### I.  Plaintiffs have standing.

Plaintiffs have established a substantial likelihood of standing. *See Delmarva Fisheries Ass'n, Inc. v. Atl. States Marine Fisheries Comm'n*, 127 F.4th 509, 515 (4th Cir. 2025) (cleaned up). This Court previously found that Plaintiffs have suffered an injury in fact and that their Privacy Act claims do not require the participation of individual Plaintiff members. Defendants merely rehash their earlier arguments, and the recent non-binding concurrences in *Bessent* do not undercut this Court's prior analysis.

### A.  Plaintiffs suffer injuries in fact.

This Court has already concluded that Plaintiffs members have suffered an injury in fact stemming from the invasion of their privacy "akin to the tort of intrusion upon seclusion." Mem. Op. at 88, ECF 49. That conclusion is legally and factually sound.

Plaintiffs make three preliminary notes. First, whether Plaintiffs' plead an intrusion-upon-seclusion tort claim is irrelevant. Plaintiffs need only *identify* "a close historical or common-law *analogue* for their asserted injury," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Second, Plaintiffs' argument is not that certain "[a]gency employees accessing data for authorized agency work," Opp. at 13, ECF 113, is analogous to a home break-in, but rather that Defendants' unauthorized, unnecessary, unlawful, and unacknowledged provision (and by DOGE Team members, use) of staggering amounts of sensitive PII is. *See* Mem. Op. at 5–9, ECF 49 (summarizing allegations and causes of action); *id.* at 100 (describing Defendants' actions as "a sea change"). Third, *TransUnion* explicitly provides that intangible harms may suffice as concrete injuries, even when they result from statutory violations. *See TransUnion*, 594 U.S. at 425–27.

Defendants rely on *O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 245 n.2 (4th Cir. 2023). The Court's previous, detailed analysis is sound: *O'Leary* is factually distinct. Mem. Op. at 77-81, ECF 49. In comparison, the record here is replete with evidence, that the statutory violation caused both "a separate harm" and "a material risk of another harm." *See O'Leary* at 243.[3]

Plaintiffs suffer a separate harm in the form of intrusion upon seclusion. *See, e.g.*, Somo Supp. Decl. ¶ 9, ECF 111-6 (describing the "horrible feeling" caused by DOGE having access to her sensitive information, which "is almost like someone breaking into [her] house and stealing stuff"); Conard Supp. Decl. ¶ 4, ECF 111-4 ("DOGE access to the sensitive information about me [in SSA systems] is a severe violation of my trust and an invasion of my privacy and person. As a survivor of sexual assault, I know what that feels like."); Gray Supp. Decl. ¶ 2, 111-8.[4] They suffer a material risk of another harm because there is a "substantial risk" that, "in the near future," Defendants' actions will cause Plaintiffs' members to suffer harms associated with a data breach exposing their personal information. While this Court previously found that risk insufficient to establish injury in fact, the last three weeks have revealed just how imminent that risk is. *See* Ex. A, Supp. Meyer Decl. ¶ 6 ("consolidating access to all of SSA's systems with aggressive timelines and AI ambitions "exponentially compound[s]" the risk), ¶ 8, ¶ 9 (DOGE has "heavily" deployed Grok despite its lack of vetting and approval).

---

[3] Whether Plaintiff declarations identify the harm in the specific legal terms used in the Amended Complaint and Plaintiffs' Motion, *see* Opp. at 11, is irrelevant. And Defendants' assertion that Plaintiff declarants "assert that Plaintiffs' members were injured by the SSA DOGE Team's mere access to data" is inaccurate. *See, e.g.*, Supp. Widger Decl. ¶¶ 3-7, 9, ECF 111-3; Supp. Conard Decl. ¶¶ 4-5, ECF 111-4; Supp. Fiesta Decl. ¶¶ 5-7, ECF 111-5; Supp. Somo Decl. ¶¶ 4-5, 7, 9, ECF 111-6; Supp. Aguirre Decl. ¶¶ 4, 7-8, ECF 111-7; Supp. Gray Decl. ¶¶ 4-5, ECF 111-8. In any event, if the harm alleged is akin to the tort of intrusion upon seclusion, "[i]t follows that the invasion of privacy harm" satisfies the injury in fact requirement. TRO Mem. Op. at 88, ECF 49.

[4] Defendants ignore the supplemental Conard and Gray declarations and inaccurately characterize Ms. Somo's supplemental declaration as "offering [a] new legal conclusion." Ms. Somo at no point references the tort of intrusion upon seclusion. Defendants' contention otherwise only underlines how closely Ms. Somo's feeling of unease maps on to that tort. *See Am. Fed'n of Tchrs. v. Bessent*, Appeal No. 2501283, Docket Entry No. 17 at 10 (Richardson, J., concurring). Second, Defendants' suggestion that Plaintiffs solicited Ms. Somo's statement is not well taken. Ms. Somo's testimony is hers alone. Plaintiffs' counsel would be happy to swear as much at the Court's convenience.

There is no requirement for a physical intrusion into the home. *Compare* Opp. at 13, *with O'Leary*, 60 F.4th at 245 (defining intrusion upon seclusion as a cause of action "against defendants who invade[] the private solitude of another."); *see* Mem. Op. at 80, ECF 49. The recent non-binding concurrences in *Bessent* do not change this standard. Instead, they affirm that intrusion upon seclusion—or "interjection into the private sphere," *American Federation of Teachers v. Bessent*, Appeal No. 2501283, Docket Entry No. 17 at 6 (Agee, J., concurring)—may occur in a home, in a hospital, or on the street, *see id.* at 11 (Richardson, J. concurring). The hallmark of the tort is "the feeling of unease when and where one should ideally be at peace." *Id.* at 10 (Richardson, J., concurring). Plaintiffs' members meet that standard.

### B.  Plaintiffs' members' injuries are fairly traceable to Defendants.

Defendants do not dispute causation as to Plaintiffs' violation of privacy. *See* Opp. at 14. While they do as to Plaintiffs' other alleged injury, the arguments confuse the alleged harm.[5] Plaintiffs allege not that "third-party bad actors *will* gain access" to members' sensitive information, *see* Opp at 14 (emphasis added), but rather that SSA's failure to adequately secure its databases creates an increased, non-speculative risk of identity theft or malfeasance. This injury requires no speculative chain of possibilities. Indeed, another court has found causation where an agency's inadequate cybersecurity measures put plaintiffs' confidential information at risk of disclosure. *See New York v. Trump*, 25-CV-01144, 2025 WL 573771 at *12 (Feb. 21, 2025).

### C.  Individual members' participation is unnecessary.[6]

Individual participation is unnecessary where an association seeks injunctive relief on behalf of its members. *See United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517

---

[5] *See* Reply ISO TRO at 12, ECF 39.
[6] Defendants imply that Plaintiffs' other claims require member participation. *See* Opp. At 14–15. That assertion is belied by case law. *See, e.g.*, *Kravitz v. United States Dep't of Commerce*, 366 F. Supp. 3d 681, 741 (D. Md. 2019) (individual participation not required for claims brought under APA or the Enumeration Clause).

U.S. 544, 546 (1996). Plaintiffs seek this exact type of relief for their Privacy Act claims, *see* Mem. Op. at 91, ECF 49; Am. Compl. at 29–30, ECF 18. Nor are Plaintiffs' Privacy Act claims the type that requires individual participation. Plaintiffs do not levy a claim for damages, making individual participation as to their standalone Privacy Act claim unnecessary, *see* Mem. Op. at 91, ECF 49; *Doe v. Chao*, 540 U.S. at 619 n.1, and Defendants cite no contrary authority. Further, Defendants fail to grapple with Plaintiffs' claims under the APA, a statute full of claims that do not require member participation. *See Kravitz*, 366 F. Supp. 3d at 741. Finally, Defendants do not address why reasons of judicial economy, which as this Court explained are the driving force behind this rule of the association standing test, Mem. Op. at 90, ECF 49 (citations omitted), are outweighed here.

## II. The SSA Defendants' decision to provide the DOGE Team with expansive access to SSA record systems without signed detail agreements, adequate training, completed background investigations, executive work forms, and/or actual need constitutes final agency action for purposes of the APA.

*First,* the SSA Defendants' decision to provide the DOGE Team with expansive access to SSA record systems without signed detail agreements, adequate training, completed background investigations, executive work forms, and/or actual need constitutes final agency action for purposes of the APA (for brevity, described hereinafter as "Defendants' conduct"). The inquiry is not limited to the Amended Complaint. *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976).[7] Even if it were, the allegations in that pleading—largely ignored by Defendants—suffice. *See, e.g.*, Am. Compl. ¶¶ 102, 114-16, 118, 122, ECF 17. However, Defendants ignore Plaintiffs' declarations, which the Court appropriately considered when granting the TRO.

*Second*, most of Defendants' arguments on this point flow from their bold reframing of Plaintiffs' claims as relating only to "SSA's provision of access to SSA employees to SSA

---

[7] Plaintiffs are baffled by Defendants' reference to 12(b)(6) motions. *See* Opp. at 16. Indeed, the cursory section of their brief that asserts that "Plaintiffs have failed to clearly identify the agency action they challenge" only cites, *Ashcroft v. Iqbal*, which—as the Court well knows—does not review a preliminary injunction. *Id.* at 16-17.

information systems" or pertaining to agencies "providing a new employee with system access necessary to his or her function." Opp. at 17-18. That mischaracterization is far from a "loose definition," *see id.*, of Plaintiffs' allegations and claims. And it reflects Defendants' inability to support its position with respect to the conduct Plaintiffs challenge.

*Third*, Plaintiffs are not, as Defendants argue, asking the Court to "oversee agency training programs"[8] or "the common business of managing government programs."[9] Nor do Plaintiffs' claims involve the SSA's "workaday" dealings. *See* Opp. at 14; *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (assessing the import of an EPA letter that "restated . . . for the umpteenth time" the agency's "longstanding interpretation" of certain EPA regulations). They rest on Defendants' decision to provide the DOGE Team "access to all SSA record systems . . . without signed detail agreements, adequate training, completed background investigations, and/or executed work forms for all DOGE Team members, and without actual 'need,'" "veer[ing] far from principles that have been the mainstay of the Agency." Mem. Op. at 103, ECF 49.

*Fourth,* Defendants' conduct "is surely a 'consummation of the agency's decisionmaking process,' and 'one by which '[the submitter's] rights [and the agency's] obligations have been determined." Mem. Op. at 103, ECF 49 (quoting *Venetian Casino Resort*, L.L.C., 530 F.3d at 931). In contending otherwise, Defendants quote *U.S. Army Corps of Eng'rs v. Hawkes Co.*, which addresses neither "new employees" nor "system access," Opp. at 19, but instead a challenge to the Army Corps of Engineers' jurisdictional determination regarding the applicability of the Clean

---

[8] On this point, Defendants cite *Jones v. U.S. Secret Serv.*, 701 F. Supp. 3d 4, 17 (D.D.C. 2023), which is easily distinguishable. The *Jones* plaintiff sought an injunction "compelling the Secret Service to train officers to deal with a specific situation" but did not allege that the agency was "required to train its officers 'in dealing with members of the public who are recording video.'" *Id.* at 16-17.

[9] For this, Defendants cite *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 20 (D.C. Cir. 2006), which is also inapposite. The Plaintiffs in that case challenged two documents: a memorandum that had already expired and a budget request to Congress. *Id.* at 18-19.

Water Act to certain property, 578 U.S. 590, 597 (2016). Defendants' attempts to distinguish *Venetian Casino* also fail. As this Court found, *see* Mem. Op. at 100, ECF 49, nothing in that case was specific to third-party disclosure. Moreover, the assertion that Defendants' conduct lacked "direct and appreciable legal consequences" for Plaintiffs' members misstates the standard and is incorrect. Under *Bennett v. Spear*, 520 U.S. 154 (1997), the question is whether the challenged action "will directly affect the parties" *or* is one that "gives rise to legal consequences, rights, or obligations," not whether there are legal consequences for Plaintiffs specifically, *see* Mem. Op. at 97, ECF 49 (citing cases). And "it is clear that the SSA has made a change to what requirements need to be met by employees to obtain such broad access." *Id.* at 102.

## MERITS

### I.    Plaintiffs have established a substantial likelihood of success on the merits.

#### A.  Plaintiffs may proceed under both the Privacy Act and the APA.

Defendants assert that Plaintiffs cannot proceed on any of their APA claims, Opp. at 21, including their arbitrary and capricious challenge, *see id.* (citing Am. Compl. ¶¶ 117–20, ECF 18). This claim—made in a section rehashing the arguments that this Court has already considered and rejected—is wrong for three reasons.

*First*, Plaintiffs' standalone Privacy Act claim is not precluded by the statute. Defendants do not explain why the statute's language regarding individual damages should be read to preclude associations from seeking injunctive relief on behalf of their members, rather than to confirm that such actually confirms that the case at bar is one under which Privacy Act suits are not bound by the statute's damages provision. Nor is their citation to a D.C. Circuit case about an individual's Privacy Act suit convincing, as it does not actually address associations. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007). And Defendants fail to address the footnote included in the portion of *Sussman* they cite that specifically notes a "district court retains 'inherent

equitable powers' to issue injunctions in § 55a(g)(1)(D) cases" at least in some instances. *Sussman*, 594 F.3d at 1122 n. 10 (citations omitted).

*Second*, Defendants' arguments that Plaintiffs cannot seek injunctive relief for Privacy Act violations through the APA likewise fail. As this Court explained, "[w]here courts have held that a plaintiff could not also bring an APA claim to obtain relief for an agency's alleged Privacy Act violation, it has been where the Privacy Act provided the kind of relief plaintiff sought." Mem. Op. at 105, ECF 49. Defendants fail to even mention the plethora of cases cited by this Court, *see id.* (citations omitted), or contend with on-point case law, *see Doe v. Chao*, 435 F.3d 492, 504 n.17 (4th Cir. 2006); *accord Doe v. Stephens*, 851 F.2d 1457, 1460–61, 1463 (D.C. Cir. 1988). Moreover, the APA precludes action only where there is a statute that affords relief of the "same genre," which injunctive relief is not vis-a-vis damages. *See Westcott v. McHugh*, 39 F. Supp. 3d 21, 33 (D.D.C. 2014) (internal quotation marks and citation omitted). And Defendants' reference to a D.C. Circuit *Bivens* case finding that the Privacy Act preluded a *Bivens* action hurts, rather than helps, their argument. *See* Opp. at 21 (citing *Wilson v. Libby*, 535 F.3d 697, 703 (D.C. Cir. 2008)). *Bivens* actions seek damages (which Plaintiffs do not) and that *Bivens* actions (unlike those proceeding under the APA, which favors judicial review, *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 22 (2018)) are easily supplanted by other statutory schemes.

*Third*, even if Plaintiffs' other claims could not proceed (which they may), the Privacy Act does not preclude a claim that Defendants acted arbitrarily and capriciously. Defendants simply cannot meet the "heavy burden" required to overcome the APA's presumption favoring judicial review. *See Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 672 (1986).

## B. Plaintiffs have a substantial likelihood of success on their Privacy Act claims.

Defendants argue that each DOGE Team member is an SSA "employee" with a "need" for unfettered access to nearly all SSA systems of record or whose access to those records is otherwise

a "routine use" as articulated by the relevant Systems of Record Notices ("SORNs"). *See* Opp. 21–25. Defendants fail on each assertion.[10]

To begin, factually, each DOGE Team member is not an "SSA employee" for purposes of the Privacy Act. ████████████████████████████████████████████████

████ but Congress has granted the authority to detail only to an "agency," 31 U.S.C. § 1535(a), and the government has maintained that DOGE is not an "agency," *see, e.g.*, Mem. Op. at 112, ECF 49. Instead, DOGE was established (1) by an Executive Order, (2) in the Executive Office of the President ("EOP"), and (3) separate from the few EOP components courts have deemed agencies. *See* Am. Compl. ¶¶ 47-55; Br. at 5-6; *see also Nat'l Fed. of Indep. Bus. v. OSHA*, 595 U.S. 109, 117 (2022) ("Administrative agencies are creatures of statute."). Moreover, although Defendants have represented otherwise to this Court, *see* Felix Supp. Decl. ¶ 4, ECF 62-2. ████████████████████████████████████████████

Next, DOGE Team members have not articulated a need for the extremely high level of access sought. Defendants consistently fail to explain why improving agency systems or maximizing efficiency, *see* Exec. Order 14,158, Fed. Reg. 8441 (Jan. 20, 2025), require DOGE Team members to have access to practically all SSA records (without anonymization) in the first instance.[11] This sweeping access is contrary to agency practices and policies, Flick Supp. Decl. ¶ 5, ECF 111-11; *see, e.g,* ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ Defendants'

---

[10]Plaintiffs note that Defendants describe only ten employees as "relevant" to the Court's assessment. Opp. at 23. But the DOGE Team at SSA now has eleven members. *See* Dudek Decl. at 2 n.1, ECF 56-1; ████████████ ████████ Plaintiffs are unsure why only ten are relevant to this case.

[11] "'As is true of interpretation of statutes, the interpretation of an Executive Order begins with its text,' which 'must be construed consistently with the Order's object and policy.'" *City & County of S.F. v. Trump*, 897 F.3d 1225, 1239 (9th Cir. 2018) (quoting *Bassidji v. Goe*, 413 F.3d 928, 934 (9th Cir. 2005)). Nor does the Order's savings clause (requiring compliance with the law, § 4, 90 Fed. Reg. at 8442) provide carte blanche for Defendants' actions here.

own explanation makes the need for such broad access unconvincing. For example, Defendant Dudek has gone back and forth as to whether anonymization is possible. *Compare* Dudek Supp. Decl.¶ 8, ECF 74-1 ("Employee 8 plans to work with non-DOGE Team SSA employees in order to retrieve anonymized, aggregated data . . . . [and] needs access to discrete individual data only when anomalies are identified, in order to detect fraud in specific instances.")*, with* Dudek. Decl. ¶ 11, ECF 62-1 ("[For Employee 8], [a]nonymization is not feasible.").

While Defendants argue that the agency considered other options, their basis is minimal. Opp. at 23 (citing AR 000005). It is further undermined by copious record evidence. *See, e.g.*, Flick Decl. ¶ 17, ECF 22-10 (noting glitches with the initial anonymized evidence in light of the speed with which SSA engineers were required to provide it to the DOGE Team). ████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ On these facts, it is "difficult to see how knowledge with such specificity [is] necessary." *Walker v. Gambrell*, 647 F. Supp. 2d 529, 538 n.4 (D. Md. 2009). Nor does the "Routine Use" exception provide an alternate pathway for access. That exception is also tied to need, and it does not apply to the DOGE Team members. Mem. Op. at 126–27, ECF 49.

### C. Plaintiffs have shown a likelihood of success on their claims under the Internal Revenue Code and Social Security Act.

Defendants have disclosed tax return information in violation of 26 U.S.C. § 6103(a) and 42 U.S.C. § 1306(a)(1). Their arguments to the contrary fail. Congress has authorized the disclosure of a very narrow set of return information from Treasury to SSA. 26 U.S.C. § 6103(i)(1)(A). But that provision covers disclosure *to* SSA, not within or from the agency. *See id.*

SSA regulations incorporating FOIA principles does not change this conclusion. Defendants focus on FOIA Exemption 6, but that Exemption protects information contained in an agency's "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *Havemann v. Colvin*, 537 F. App'x 142, 146 (4th Cir. 2013) ("[W]e do not think that Congress meant to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information. Rather, [t]he exemption [was] intended to cover detailed [g]overnment records on an individual which can be identified as applying to that individual.") (internal citations and quotation marks omitted). Second, the single case Defendants cite for the proposition that "there is no freestanding private right of action to enforce a regulation" does not actually say that. Opp. at 25; *see Alexander v. Sandoval,* 532 U.S. 275, 293 (2001) ("Neither as originally enacted nor as later amended does *Title VI display an intent* to create a freestanding private right of action to enforce regulations promulgated under § 602) (emphasis added); *id.* 293 n.8 ([the dissent's claim] "*begs the question* whether authorization of a private right of action to enforce a statute constitutes authorization of a private right of action to enforce regulations that go beyond what the statute itself requires") (emphasis added).

**D.  Plaintiffs are likely to succeed on their arbitrary and capricious claims.**

An agency must "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). Plaintiffs are likely to succeedon their arbitrary and capricious claims for several reasons, all now supported by record evidence.

First, SSA changed its standard practices in deciding to provide the DOGE Team members with such vast amount access. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████  ████████████████████████████

████████████████████  But Defendants adopted a policy of maximum access for DOGE

Team members, even where, as explained in after-the-fact evidence more limited access was

possible, *see, e.g.*, Dudek Supp. Decl. ¶ 8, ECF 74-1; Russo Decl. ¶¶ 9, 14, ECF 36-1 (Employees

5 and 7 granted access to more databases than they actually accessed for work).

Second, the record evinces zero consideration of any reliance Plaintiffs' members had on

the agency's commitments to privacy. Defendants' assertion that this accusation is "generalized,"

Opp. at 30, falls to the specific allegations of Plaintiffs' members. *See, e.g.*, Ex. I, Gray Decl., at

PLFS-046 ¶ 6; Ex. D Imperiale Decl., at PLFS-021 ¶ 7; Ex. B, Conard Decl., at PLFS-013-PLFS-

14 ¶ 10; Ex. C, Doe Decl., at PLFS-017 ¶ 6; Ex. E, Williams Decl., at PLFS-024 ¶ 6; Ex. G, Somo

Decl., at PLFS-035 ¶ 9. This failing alone renders Defendants' actions arbitrary and capricious.

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020).

Third, Defendants fail to rebut the assertion that their conduct was purely due to political

pressure and divorced from statutory and other considerations, which is dispositive as to whether

that conduct was arbitrary and capricious. *See* Prelim. Inj. Mot., ECF 111-1 (hereinafter "PI Mot.")

at 28 n.32 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983)). That is a

glaring omission. Defendant Dudek admitted that "the quick rollout" of at least some DOGE

changes "was at the behest of the White House, which demanded an urgent time frame."[12]  On

---

[12] Andrew Duehren, *Social Security, Buffeted by Turmoil, Awaits a New Leader*, NYT (Mar. 24, 2025), https://perma.cc/M4NB-4S9F.

another occasion, Dudek ordered the agency to end "a contract that had allowed parents of newborn babies in Maine to sign their children up for a Social Security number at the hospital" "after watching Janet Mills, Maine's Democratic governor, clash with Mr. Trump at the White House."[13] And, as the Court well knows, he threatened to shut down the entire agency after the Court issued its TRO.[14]  All of that is against the constant backdrop of SSA DOGE Team members appearing on television and at political rallies, at which they closely align themselves with Defendant Musk and DOGE while touting all the work DOGE is accomplishing at SSA.[15]

**II. Plaintiffs have established that Defendants' actions cause them irreparable harm.**

Plaintiffs allege two distinct irreparable harms that their members will suffer absent a preliminary injunction. Defendants can refute neither.[16] Plaintiffs' members' information has been disclosed to DOGE—and, absent injunctive relief, will continue to be. That ongoing exposure, standing alone, irreparably harms Plaintiffs' members. Plaintiffs have explained why these harms are immediate and actual. *See* Part I.A, *supra*. Nor can they be remedied down road by damages. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 (4th Cir. 2019).

Unable to meaningfully refute that Plaintiffs face irreparable harm, Defendants turn to several inapposite, non-binding authorities. The Court has already explained that the District Court of D.C. applies a higher bar for injunction relief than this Court or others in the Fourth Circuit and that that standard underlies the decisions in *Univ. of Cal. Student Ass'n v. Carter*, 2025 WL 542586 (D.D.C. Feb. 17, 2025) and *Alliance for Retired Ams. v. Bessent*, 2025 WL 740401 (D.D.C., Mar.

---

[13] *Id.*
[14] Soc. Sec. Admin., Press Release, *Statement from Acting Commissioner Dudek about Temporary Restraining Order*, (Mar. 21, 2025) https://perma.cc/V9JM-U3JK.
[15] Fox News, *Elon Musk and DOGE team give behind the scenes look at their mission*, YouTube (Mar. 28, 2025), https://perma.cc/YM2D-D4LW; Aaron Navarro, *Elon Musk, DOGE use access to Social Security data to elevate claims against migrants*, CBS News (Apr. 4, 2025) https://perma.cc/9TGH-73NZ.
[16] Defendants fail to refute Plaintiffs' theory of irreparable harm arising from the elevated risk of malign actors outside the government accessing Plaintiffs' members' PII for the reasons discussed in Jurisdiction Parts I.A and I.B, *supra*.

7, 2025). Similarly, this Court has already identified the increased risk posed by "ongoing, unprecedented, unfettered access" to SSA systems as more immediate than that in *Electronic Priv. Info. Ctr. v. U.S. Off. of Pers. Mgmt.*, 1:25-cv-255, 2025 WL 580596 (E.D. Va. Feb. 21, 2025).[17]

## II.    The public interest and balance of equities favor an injunction.

The public interest and balance of equities "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court has already concluded that "there is a strong public interest in maintaining the confidentiality of PII, such as medical records and financial information. . . [Defendants'] intrusion into the personal affairs of millions of Americans—absent an adequate explanation for the need to do so—is not in the public interest." Mem. Op., at 131-132, ECF 49. Defendants have never meaningfully disputed this. Instead, they halfheartedly suggest that the public interest would be harmed by entry of an injunction, and despite the clear delineation between Plaintiffs' merits arguments and the public interest identified by this Court and Plaintiffs, baldly assert that Plaintiffs' arguments on public interest collapse into merits arguments. Both responses are unavailing. Opp. at 29–30, ECF 114.

Defendants misapprehend Plaintiffs' argument on the public interest. As this Court has explained, the interest in protecting PII is not identical to the interest in ensuring that the government follow the law. Because of the importance of protecting PII, numerous laws serve to ensure the government's obligations to do so. But Plaintiffs do not argue that Defendants' unlawful conduct is against the public interest merely because it is *unlawful*. It is against the public interest because it violates the public interest in the protection of personal information.

---

[17] The Fourth Circuit's recent grant of a stay pending appeal in is not instructive on this question. Even ignoring the important differences between the cases, *see* ECF No. 119, Judge Richardson's concurrence characterized it as "at a minimum, contestable that the plaintiffs [in that matter] can show irreparable harm," *Bessent* Appeal at 7, while Judge King's dissent (joined by five other members of the Fourth Circuit) far more conclusively approved Judge Boardman's determination that plaintiffs had suffered such a harm, *id.* at 9.

Even assuming the lawfulness of SSA's efforts to curb fraud, pausing them will result in only minor harm to the government. In colloquy with this Court during a telephonic conference, Defendant Dudek acknowledged that, far from being time-sensitive, the efforts now underway are "work [SSA has] never gotten around to as an agency." Transcr. Tel. Conf., Mar. 27, 2025, at 10-20, 21. Any further delay would be incidental, and any further money lost to would be recoverable through legal action. Nor does an injunction prescribing compliance with the Privacy Act—in the face of egregious violations thereof—"impinge on the President's broad authority." ECF No. 113 at 30. To the contrary, such an injunction simply ensures that the President and his agents abide by the statutory limitations placed upon them by Congress.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion.[18]

*Signatures follow on next page.*

---

[18] The parties previously agreed to "address the need for witness testimony [at the hearing scheduled for Tuesday, April 15] in their respective briefing, with Plaintiffs stating their position in their reply." ECF 68 at 2. Defendants did not raise that issue in their Opposition and have thus forfeited the right to seek testimony from Plaintiffs. Plaintiffs, for their part, defer to the Court regarding whether testimony from Defendants would aid the Court's evaluation of Plaintiffs' motion.

Dated: April 10, 2025

Respectfully submitted,

*Alethea Anne Swift*

Alethea Anne Swift (Bar No. 30829)
Emma R. Leibowitz*+
Mark B. Samburg (Bar No. 31090)
Robin F. Thurston*+
Carrie Y. Flaxman+
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
aswift@democracyforward.org
eleibowitz@democracyforward.org
rthurston@democracyforward.org
msamburg@democracyforward.org
cflaxman@democracyforward.org

*Counsel for Plaintiffs*

* Admission to this Court pending
+ Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I, Alethea Anne Swift, certify that I filed the foregoing document with the Clerk of Court for the United States District Court for the District of Maryland, Northern Division, by using the CM/ECF system, which sent a notice of such filing to all registered CM/ECF users who have appeared in this case.

/s/ Alethea Anne Swift
*Counsel for Plaintiffs*